## BLACKBURN v. BONITA MFG. CO.

(District Court, E. D. Pennsylvania. February 7, 1918.)

### No. 1605.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—CABLE HANGER.

> The Blackburn patent, No. 1,144,318, claim 1, for a cable hanger, by means of which a lead pipe in which electric wires are inclosed and strung on poles may be supported by a steel cable, called a messenger, which is strung above the lead cable, *held* not anticipated, valid, and infringed.

In Equity. Suit by Jasper Blackburn against the Bonita Manufacturing Company. On final hearing. Decree for complainant.

Edward E. Longan, of St. Louis, Mo., and J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for plaintiff.

Howson & Howson, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This dispute involves the validity and infringement of letters patent issued to the plaintiff June 22, 1915,

under No. 1,144,318. The formal answer is a denial of both validity and infringement. The real defense is that the proprietary rights of the plaintiff are limited to a structure so unlike that of defendant as that no real question of infringement arises. A short statement of the special facts involved in the case will show on what the real dispute hinges.

The patent is for a cable hanger. It is a device by means of which a lead pipe, in which electric wires are inclosed and strung on poles, may be supported by a steel cable, called a messenger, which is strung above the lead cable. It is of the essence of the device, and of this invention, that this hanger be so constructed as that it may be attached to the messenger readily by the use of one hand, yet, when attached, will have so firm a grasp upon the messenger as to be practically immovable, in the sense of any longitudinal sliding. There is an admitted invention of the plaintiff, his right to which is not in dispute, in the form of a hanger which is so constructed that a part of the wire of which the hanger is made extends as an arm, reaching from one of the hooks of the hanger toward the other hook, but so that this arm is disposed at an angle to a line drawn from one hook to the other. This arm terminates in a tooth having either a smooth or serrated edge. The principle upon which the hanger is thus constructed is that, after one hook has been placed over the messenger, the other hook is adjusted through and by a leverage action. The wire of which the hanger is made has in it more or less spring. The result is that the pressure exerted through this spring action holds the hanger firmly to the messenger, and this firmness of grasp is increased by the further fact that the tooth at the end of the arm above mentioned enters the messenger, and, if the latter be formed of strands, the tooth inserts itself between two of these strands. The effect of all of this is that all longitudinal movement or sliding of the hanger along the messenger is prevented. This is the make of device referred to in the second and third claims of the patent, which are not in issue. It is clearly not infringed by the device of the defendant. It is referred to, and with some particularity described, because by this is brought out another form of plaintiff's device, which is averred to be protected by claim 1 of the patent, which is in issue and averred to be infringed by the defendant.

A reference to one feature of the prior art will also aid in bringing out the point of the controversy between the parties. A part of the prior art is what is known to this record as the Krips & Wright patent. The principle upon which the hanger of this latter patent is constructed is to make avail of what has aptly been called a scissor action. The wire composing this hanger terminates in two hooks so shaped as to go over and inclose the messenger. The device may further be described by following the wire from one of these hooks down in the form of a loop and coming up spirally near its starting place, where it is bent at right angles away from the starting point, and then again at right angles to its last direction, and going downward, forming another loop parallel with the first one, returning upward again, and terminating in the other hook. The wire between the points where it makes these right-angled turns is bent over in the form of a bight to

also hook the messenger. What results is that we have really four hooks, two of them having no ends, or two single and one double hook, but forming together one gripping device. The grip of these hooks upon the wire comes from the elasticity of the wire in the loops; the inside double hook pressing in one direction and the outside single hooks in the opposite direction. This pressure, it will be seen, is transverse. It was found unnecessary to have this duplication of loops and hooks which was characteristic of Krips & Wright. The device might be confined to a single loop and two hooks only, if they were bent in a certain way and were sufficiently separated. The change in the structure does not lend itself readily to verbal description, but for our present purposes is clearly enough indicated and illustrated in Figure 5, accompanying the Brenizer application, for the letters patent granted to him.

For the purpose of clearly presenting the real point of difference between these parties, this latter may be viewed as the device of the defendant. It is, of course, obvious that there is in this device nothing whatever of the tooth action which is present in the device referred to in claims 2 and 3 of the patent in suit. It is averred by the defendant that the gripping action of this hanger is due wholly to the spring which is communicated by the loop and is exerted transversely. If this is wholly true, the defense is made out.

The plaintiff, however, earnestly asserts that claim 1 of his patent covers a modified form of his patented device, from which the tooth feature is wholly eliminated, and which is infringed by the device of the defendant. The grip of this make of plaintiff's device is afforded through and by an elastic element, which is provided so that it extends from one hook toward the other and is disposed at such an angle to the line drawn from one hook to the other as that, when one hook is placed over the messenger, the other is adjusted through and by a leverage pressure which brings the elasticity of the wire, of which the hanger is made, into play, so as to give a practically firm grip upon the messenger. The described means of securing the application of this springing force is averred to be of the essence of the plaintiff's invention, and to have been appropriated by the defendant. This spring is secured in the patented device through and by producing a kinking action in the messenger. To get this you must have a fulcrum between the hooks, and to get a sufficient power from the leverage the hooks must be separated. In his make of device the plaintiff gets it by a lengthening out, in the form of an arm, of what would be the barbed part of the hook ( if it were a fish hook), and disposing it at the proper angle. The defendant, it is asserted, gets it in the same way, introducing only the formal difference of having the upper part of the shank of the hook serve the purpose of this extended arm, and by disposing it at the proper angle, and having the hooks separated in order to get the same leverage action of the required strength as does the device of the plaintiff.

A vigorous denial is made of the truth of the assertion of the defendant that the force which makes the defendant's grip a sufficiently firm one is a force transversely exerted. On the contrary, it is confidently and aggressively asserted that the grip of this hanger is the

very grip which the plaintiff invented, and not the transversely operating grip of Krips & Wright. The whole discussion is thus reduced to the results of two inquiries: One, whether the plaintiff's device, with the tooth eliminated, is patentable, and has been patented; and, if so, the other inquiry, of whether the grip of the defendant's hanger is the grip which the plaintiff contributed to the art.

The first inquiry of patentability is itself divided into two: One is whether the invention, which the plaintiff now claims to have made, was made and disclosed through and by his application, and was in fact by him patented; and the other, whether it was anticipated. In considering this question, two preliminary observations may be made: One is that the device which is verbally described in the application was a device which possessed as one of its essential features a tooth which was meant to bite into and engage the messenger wire in the manner hereinbefore described. Another observation is that it was found to be the fact that a practically effective device could be made without the presence of any real tooth action, if certain other elements were present, including an extending arm disposed at such an angle as that the hanger could not be brought in alignment with the wire otherwise than by a leverage action which would result in the kinking, to which reference has frequently been made.

This brings us to the first inquiry suggested of whether the thought of this second device is disclosed through and by the application and is covered by claim 1 of the patent. The comment above made, that this secondary invention is not verbally proclaimed in the application, is justified by the admission made on behalf of the plaintiff by his expert. The admission is "the specification does not specifically point out" this secondary device. It is asserted, however, that such verbal disclosure was not called for, because the described tooth device itself voiced the invention of the secondary device, and this, supplemented by claim 1, which is averred to cover the secondary device, makes a full disclosure of the invention now in controversy. To restate the same thought, in the phrase employed by plaintiff's expert, a device operating in accordance with the principles upon which the secondary device operates is "the inevitable operation of the device," the structure of which is disclosed by the application.

Our finding is with the plaintiff upon this feature of the discussion. The finding is based upon two convictions: One is that no one can have a conception of the preferred tooth device without having disclosed to him that the tooth feature may be dispensed with. The other is that claim 1 does cover the secondary or toothless device. We say this because, if it does not cover such a device, it is meaningless, and as it must be assumed to have had some meaning, and behind it the purpose to cover something, we are justified in concluding that it does express the thought of and does cover the only inventive feature which it could express and cover.

This brings us, so far as this branch of the case is concerned, to the second question, of whether, assuming the presence of the inventive feature referred to, it originated with the plaintiff. The Hagerman patent, No. 795,910, is relied upon as an anticipation. The Pat-

ent Office experience of the Blackburn patent is cited as confirming the thought of anticipation. We are unable to get into accord with the thought either of anticipation or of any such finding by the Patent Office. The claim at first made by Blackburn was rejected, but it was rejected because it was a very broad, if not the broadest possible, claim to a hanger possessing the feature of holding its position on the messenger wire. Blackburn did not broadly invent such a hanger, but there is implied in this no denial of his claim to have invented a hanger by which this sliding movement was prevented by the particular means which he devised for the purposes of the accomplishment of this result.

The Dissel patent, No. 950,148, which is relied upon, may be dismissed with the comment that it also disclosed a hanger, but not the hanger in suit. We are unable to find that the principle of action to which the Dissel device owes its grip is due to the element of a leverage resulting in a kinking of the wire. The real principle of its action is a pinching of the wire, produced by one arm pressing in one direction and the other arm pressing in the opposite direction. In other words, it is essentially what the very capable expert on behalf of the defendant characterized as a scissor action. Inasmuch, however, as this suggests a cutting rather than a pinching result, the thought intended may perhaps be more aptly and accurately described by calling the action a pincer, rather than a scissor, action, although the two things are in this respect of course the same.

The same comment may again be made upon the Brown patent, No. 837,185, which is also cited as an anticipation. Here we have what is really the same transverse pressure as before; the only difference being that the loop in the hanger is wholly upon one side of the messenger wire, and not partly upon each side, as in the Dissel patent. We have the same transverse action, however; the pressure being exerted by the turned down ends of the hanger. It must be admitted, however, that there is in this a resultant kinking action to some extent. There would seem, also, to have been a clear recognition of this by Brown, and a reliance upon this to give to his hanger a firmness of grip. This patent will be further referred to.

The Krips & Wright patent, No. 960,344, would seem to be clearly distinguishable from the patent in suit, because the former owes its grip wholly to the pincer principle. The file wrapper clearly presents this differentiation. The original claim having been rejected on Hagerman and Dissel, and the first amendment of the claim having been rejected because vague and indefinite, the claim as it now stands was made and allowed over Krips & Wright.

This takes us back to the Brown patent. It is significant that there is an omission of this from the file wrapper. Finding, as we do, the presence and the recognized presence of the kinking action, we must begin the comparison of Brown with Blackburn with a recognition of a likeness in this very important, if not vital, principle. When, however, we come to consider the two devices, we find the kinking action to be necessarily present in all of these devices in which there is a transverse pressure exerted, if the pressure is exerted at two separated

points. Considered with this thought in mind, the pressure is due, not to a simple scissor or pincer action, but to this kind of a pressure brought to bear, not on opposite sides of the object gripped, as it is in the case of pincers, and not at nearly opposite sides, as it is in the case of scissors, but the pressure is exerted from opposite sides at points more or less separated.

This suggests the thought of whether Blackburn can be distinguished from Brown in the same way in which Blackburn is distinguished from Krips & Wright and the other patents. We think this is to be learned from a comparison of the two devices. The kinking action in Brown is due to transverse pressure exerted at more or less widely separated points. There is the absence of the thought of the arm and also of the thought of the elasticity in the material of the hanger being brought into operation through the prying action, by which the line drawn through the arms of the hanger is brought into alignment with the messenger wire. If Brown and Blackburn are compared with this thought in mind, the absence of Brown from the file wrapper is explained, and the conclusion is that the Brown device is not an anticipation of that of the plaintiff.

This brings us to the consideration of the second question which was proposed. This is the question of infringement. The position of defendant is a concession (at least arguendo) of invention in the primary or preferred device described in the plaintiff's application for letters patent. The inventive element in this, however, is essentially the tooth feature, and as the tooth feature has been wholly eliminated from the defendant's device, there is the consequent denial of infringement. It seems clear, however, that this denial of infringement is nothing more than the reassertion of the denial of any proprietary right in the plaintiff, other than his right to the tooth device, and inasmuch as we have reached, so far as concerns the trial court, the conclusion that the plaintiff's patent rights are not limited to a device embracing the tooth feature, but extend to a device omitting the tooth feature, but embracing the other features, to which we have several times made reference, it follows that this calls for a finding of infringement. We say this because there is in the defendant's device every element which contributes to its efficiency which is in the device of the plaintiff. The differences are differences in form, but not in substance. The arm is less exposed to observation and more difficult to recognize; but it is there, and there is the presence of the elements which exert the kinking action to which both devices owe their success.

We must subscribe to nearly all the principles of construction of patent claims which defendant invokes, but the application of them to the facts of this case cannot be conceded. There is running all through the argument of defendant the iteration of the averment that the plaintiff's patented device is untried, and his patent a paper patent. By this it is obvious in many instances that what is meant is the statement in another form of defendant's view that plaintiff's patented device is a toothed device. In other places it would seem the statement means that plaintiff's device is a closed ring device. The fact is that plaintiff's device has been sold in large quantities. There does not seem to be

anything which limits the plaintiff to a closed ring device, and we have found that he is not limited to a toothed device. The paper patent cases, therefore, not only have no application, but plaintiff is brought within the converse principle of being able to lay claim to every reasonable construction of the scope of his patent which will protect him against encroachments upon the trade which has been built up in the thing which he has patented.

It is not made entirely clear whether defendant asserts that its device owes all of the efficiency of its grip to the scissor action, or whether it claims immunity from the charge of trespass upon the rights of plaintiff because its device has, and plaintiff's device, as embodied in the closed loop form, has not, this action. We have made the finding that defendant's device does owe its grip to the arm feature, and, if there is also a transverse grip, this will not enable them to escape the charge of infringement.

We are not able to accept the principles which defendant deduces from the fact that its device has also been patented. One branch of the argument would seem to go almost, if not quite, to the length of supporting the proposition that the defendant has not infringed, if its device is an improvement upon that of plaintiff, although this 's doubtless not meant to be urged. A patent is evidence of the possession of the right to make, use, and sell, and commands the prima facie finding of validity. When, however, a prior patent is put in evidence, this negatives the right to that which is first patented. It does not, however, necessarily negative the validity of the second patent, because there may be patentable novelty in the second device, notwithstanding the fact that it has incorporated with it the device first patented.

We therefore do not follow defendant's argument to its conclusion, that a second combination, which contains a less number of elements than a first (one element in the second being made to perform functions for which the first requires two or more elements), does not infringe the first. If the reduction of the number of elements is at the loss of the functions which the omitted elements perform, there is no invention, and the second invention is not patentable. If the reduction is without loss of function, there is invention. To conclude, however, that because the second is patentable by reason of its being an improvement there is no infringement is a conclusion which cannot always be reached. If each patent is for a combination, and the combinations are different, there is, it is true, no conflict or overlapping, and, in consequence, no infringement; but, if the second device is merely an improvement upon the first, the second patent is subordinated to the rights granted by the first. This must be true, or one man could appropriate the patented device of another by merely inventing an improvement. The true doctrine, as applied to the facts of this case, leads to the conclusion that the defendant's device may be a better device than that of the plaintiff; but, as we have found it embodies the invention made by the plaintiff, this compels the finding of infringement.

The file wrapper of the defendant's patent we do not find to have been put in evidence. The application was filed about the time the plaintiff's patent was allowed (September 22 and November 25, 1914),

and the patent issued a year after the plaintiff's was allowed. What the file wrapper would disclose we do not know. The finding of infringement, however, is no finding in conflict with that of the Patent Office that the defendant's device was itself patentable.

The bearing of the discussion of the utility of the plaintiff's commercial device is not clear. Utility is found, and cannot be seriously denied. The continued extended use of the older Cameron device is no denial of utility in that of the plaintiff.

The bearing of the patent granted to plaintiff, after the grant of the patent in suit, is likewise not clear. We cannot draw the inference, which defendant asks to have drawn, which is in effect that it is a confession that plaintiff's patent in suit was limited to the toothed device of claims 2 and 3. The purpose of the later application would seem to have been to protect the use of a special form of loop or saddle for carrying the lead conduit pipe, and this element was inserted in a large number of combination claims.

The final finding is that claim 1 of the plaintiff's patent is valid and infringed. The plaintiff is in consequence entitled to a decree enforcing these findings, with costs, and leave is granted plaintiff to submit such form of decree.