### BONITA MFG. CO., Inc., v. BLACKBURN.

(Circuit Court of Appeals, Third Circuit. June 28, 1918.)

#### No. 2354.

PATENTS ⊚328—VALIDITY—INFRINGEMENT—CABLE HANGER.

The Blackburn patent, No. 1,144,318, claim 1, for a cable hanger by which to attach lead tube carrying electric wires to supporting steel cable, called a messenger, *held* valid, but not infringed by Brenizer patent No. 1,155,127.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by Jasper Blackburn against the Bonita Manufacturing Company, Incorporated. From a decree (248 Fed. 743) for complainant, defendant appeals. Reversed in part.

Howson & Howson, of Philadelphia, Pa. (C. H. Duell and F. P. Warfield, both of New York City, of counsel), for appellant.

Edward E. Longan, of St. Louis, Mo., and J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree holding the first claim of the plaintiff's patent No. 1,144,318, June 22, 1915, for Improvements in Cable Hangers, valid and infringed. 248 Fed. 743.

A cable hanger is a device by which lead covered electric cables are hung and suspended. These cables are very heavy, yet they possess so little tensile strength, that they cannot support themselves. Therefore, in running an electric line, a strong steel wire is first tightly stretched from pole to pole. Its function is to carry the entire weight of the cable. This wire is technically termed the "messenger wire" or the "messenger." On the messenger, cable hangers—small spring wires so bent as to hold the cable and grip the messenger—are placed at regular intervals, and through them the heavy lead covered electric cable is drawn and by them it is suspended.

To do satisfactorily the things required of it, a cable hanger must be capable of being readily affixed to the messenger without the use of tools; that is, by the lineman's hands alone, and must be as readily removed. When in place, the hanger must grip the messenger so that it

will not slip or creep when the heavy cable is drawn through it. As cable hangers are used by the million and are put in position by hands that are not always expert, it is necessary that their construction be cheap and simple.

These being the demands of the art, every cable hanger consists, so far as we have been shown, of a single piece of elastic wire bent in a shape to do the several things required of it. The primary requirements being to grip the messenger and carry the cable, there have been developed in all hangers certain well defined parts. These are a loop, by which the cable is loosely suspended, and hooks, which firmly grip the messenger. All cable hangers have loops of different dimensions and hooks bent or twisted in varying shapes to effect different grips. There is not much variation of shape in the loops; there is considerable in the twist of the hooks. It is in the latter that invention in different hangers is to be found, for it is by the peculiar grip of the hanger hooks and their extensions that resistence to sliding or creeping is effected.

The simplest and perhaps the least effective grip is in the very early type where the hooks are positioned close together and immediately above the loop. All grips are variations of this elemental grip. Brown (No. 837,183) varied it in one form by spacing the hooks somewhat apart and extending their ends into arms which pass outwardly in opposite directions along the side of the messenger and beneath it; and in another form by spacing the hooks wide apart and by carrying spacing arms from the loop to the hooks along the top of the messenger. Hagerman (No. 795,910) had previously done very much the same thing, with a difference. He separated the hooks by even a wider space than in Brown's first form and extended from but one hook a messenger-encircling arm. Dissel (No. 950,148) likewise separated the hooks but carried the hooks over the messenger, then down below the messenger and up again, thus entwining the messenger as by the horns of a ram outstanding in opposite directions. Krips & Wright (No. 960,344) placed four hooks above the messenger and two below with no more spacing than is necessary to align the hooks. These hangers were representative of the art before Blackburn. It is really difficult to discover in them any distinguishing principle of gripping except such as is incidental to the peculiar mechanism of each, unless it be the distinction between the Krips & Wright hanger, which grips the messenger transversely and squeezes it, and Brown, which develops frictional resistance by extended arms on the messenger, and Hagerman and Dissel, which entwine the messenger and obtain somewhat the same resistance as in Brown.

In this state of the art Blackburn came along and invented what admittedly is an improvement on other hangers. His invention is disclosed by the claim of the patent quoted in the margin.[1]

Blackburn's hanger consists of the customary tempered steel wire

[1] "1. A cable hanger comprising a support for a cable, a pair of separated elements for suspending the hanger from a messenger, and an elastic element extending from one of the separated elements toward the other and disposed at an angle relative to a line drawn through the separated elements."

bent and twisted in the form of a loop with spacing arms extending from the loop to the hooks, as in other hangers. The hooks, however, are spaced well apart. One hook performs no function other than that of a hook; while from the other hook an arm is extended, as in Hagerman, but differing from Hagerman, the arm is reversed and turned back toward the neck of the loop. This is a third arm, that is, it is an arm in addition to the customary two spacing arms, and is the "elastic element" mentioned in the claim. This arm is so bent that it must be sprung out of its normal position when placed by leverage on the messenger. When thus sprung into position, it presses by elastic contact on the underside of the messenger. In this arrangement, the spacing arm of the hanger, extending from the loop to the last named hook, is in a position below the reversed elastic arm, and its practical effect (though not its claimed function) is to give the hanger a grip very like the grip of a cinch. When the metal of the hanger is heavy, the spacing arm overlapping the extended elastic arm may not come in contact with the extended arm, but when the metal is light, the overlapping spacing arm is in contact with the extended arm. The result in either instance is that the elastic arm grips the messenger with a locking action and the greater the drag of the cable the tighter becomes the grip on the messenger.

There is merit in Blackburn's conception of a locking grip for which he is entitled to the reward of a patent. The Blackburn hanger is a mechanical and commercial success. Without discussing the various phases of validity of the Blackburn patent, we find ourselves in accord with the learned trial judge in holding its first claim valid. The remaining question is whether the claim is infringed.

The cable hanger of the defendant is made under a patent to Brenizer (No. 1,155,127). It is a very simple arrangement. It consists of the ever-present loop and hooks, a pair of spacing arms extending outwardly in opposite directions from the neck of the loop, passing obliquely underneath and along the sides of the messenger wire and ending in ordinary overhanging hooks. On first view it seems very like the primitive hanger with hooks above the loop, but on closer inspection it is apparent that the hooks are farther apart, and that they grip in a way the hooks of the early hanger did not.

The grip of the Brenizer hanger is found in the pressure exerted by the drag of a moving cable—according to the direction of its movement—on one or the other of the spacing arms, whereby it is locked against the bottom of the messenger and also along its side as it nestles between the strands of the messenger, if the messenger be a wire cable. (The latter action, though actual, is not claimed by the patent.) The result is that the grip develops into a lock, and, as in Blackburn, the harder the pull the tighter the grip becomes.

The Brenizer hanger contains no inwardly extending or underslung arm, and consequently the grip does not resemble a cinch. Its grip is gotten exclusively from the spacing arms and connecting hooks. The plaintiff says that this device infringes the patent, and for several reasons. The principal one, as he maintains, is, that its two arms extending outwardly from the loop to the hooks are the equivalent of the

Blackburn one elastic arm extending inwardly from a hook. Of this opinion was the learned trial judge. We have difficulty in reaching this conclusion, assuming, as we do, that we are correct in our opinion on several points, which we shall mention very briefly.

The patentee lays emphasis on the underhold of the elastic arm of the patented device with its lock-like grip, and very properly, for this is the essence of the invention. But he did not discover the underside of the messenger and had no monopoly on a hold upon it. The grips of Hagerman, Brown, and Dissel, also went under the messenger as well as along its side. It is claimed for the patent that its grip makes a "kink" in the messenger which aids the locking. This is true, but there is nothing novel about a kink. It is always to be found in greater or less degree where an arm extends both above and below the messenger and pressure is exerted at all points of contact, as in Hagerman, Brown, and Dissel. The patentee further claims that the arms of the Brenizer hanger are elastic, and are practically the "elastic element" of the claim of the patent. It is true that they are elastic in the sense that they are a part of the single elastic wire out of which the whole device is constructed, but this elasticity performs no elastic function in the grip. Fundamentally, the arms of the Brenizer hanger are rigid. In the hanger of the patent, the extended arm is purposely given elasticity by bending it out of normal position so as to spring it on the messenger. It is from the spring thus given the arm that the particular gripping action of the claim is obtained. There is no such function from elasticity in the arms of the defendant's device.

While the device of the patent has the same pair of arms extending outwardly in opposite directions from the neck of the loop to the hooks, as in Brenizer's device, the patent gives no function to these arms other than to space the hooks and to carry the hooks at their extreme ends. These are termed "spacing arms," and in the hanger of the patent they perform no function other than to space and to hold the hooks. In the device of the defendant, substantially the same spacing arms are present, but they are positioned closer to the messenger wire and in such a relation to its bottom and side as to give them in addition to their normal spacing and hook-holding function a gripping function. The gripping function of the spacing arms of the Brenizer hanger is not present and is not even suggested by the same arms in the device of the patent. We think the defendant has done something with this pair of arms that is really useful and that was not thought of by Blackburn. He has given them a function, which, so far as we are informed, was not given them by any hanger in the art. This involves merit, to the benefit of which we think Brenizer is entitled. We feel that in thus giving the ordinary spacing arms of a hanger a new function—that is, in developing an entirely new function in an old means—it cannot be said that this old means is the equivalent of the very different new means of the patent.

We fail to find in the hanger of the patent any principle of a grip newly discovered or broadly developed that entitles the patent to a wide range of equivalents. Blackburn obtained a lock grip in one particular way. It has merit. Brenizer obtained a lock grip in another

way. It too has merit. Both were rewarded by patents. The merit of each invention is found in its particular construction and in its peculiar lock grip. Neither was awarded a monopoly of a lock grip. As the construction of the two devices is structurally and functionally different, one cannot impose on the other the doctrine of equivalents, and, so long as the patents stand, each has a monopoly within its sphere. We are of opinion, therefore, that infringement is not present and that the decree below should to this extent be reversed.